UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| SHERRY A. KEMP, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 1:12-CV-190-JEM |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of the | ) | |
| Social Security Administration, | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Sherry A. Kemp on June 13, 2012, and an Opening Brief of Plaintiff in Social Security Appeal Pursuant to L.R. 7.3 [DE 23], filed by Plaintiff on February 27, 2013. Plaintiff requests that the decision of the Administrative Law Judge be reversed and remanded for further proceedings. On May 8, 2013, the Commissioner filed a response, and on July 17, 2013, Plaintiff filed a reply. For the following reasons, the Court grants Plaintiff's request for remand.

**PROCEDURAL BACKGROUND**

In November 2009, Plaintiff filed an application for disability insurance benefits ("DIB") and Supplemental Security Income benefits ("SSI") with the U.S. Social Security Administration ("SSA") alleging that she became disabled on October 13, 2009. Plaintiff's application was denied initially and upon reconsideration. On October 8, 2010, Administrative Law Judge ("ALJ") Bryan Bernstein held a hearing at which Plaintiff, with counsel, and a vocational expert ("VE") testified. On November 1, 2010, the ALJ issued a decision finding that Plaintiff was not disabled. On April 11, 2012, the Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the

final decision of the Commissioner.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## FACTS

**A.    Background**

Plaintiff was 26 years old on the date of her alleged disability onset. She had a high school education and had completed some college courses. She had past relevant work as a fast food worker, cashier-checker, security guard, hotel clerk, and training specialist.

**B.    Mental Health Evidence[1]**

Plaintiff suffers from anxiety, depression, bipolar disorder, and borderline personality disorder. Plaintiff was hospitalized several times for suicidal ideation. She has received therapy and medication management, including a number of medications to treat her mental health disorders, at Park Center.

On February 16, 2010, Plaintiff was examined by Ryan Oetting, Ph.D., at the request of the state disability determination service. He noted that Plaintiff had clinically significant symptoms of anxiety and depression and gave a diagnostic impression of anxiety disorder NOS, alcohol abuse, and borderline personality disorder. He assessed her Global Assessment of Functioning (GAF) of 56.

---

[1] Because Plaintiff does not challenged the ALJ's findings as to her physical limitations, those are not addressed herein.

On February 23, 2010, non-examining state agency psychologist Dr. Kenneth Neville completed a Mental Residual Functional Capacity Assessment based on Plaintiff's mental health records. He stated that Plaintiff's attention and concentration were moderately limited, she might have difficulty with interpersonal relationships due to borderline personality issues, and she had limited frustration tolerance but retained the capacity to deal with change if the change was not dramatic or frequent. Dr. Neville concluded that Plaintiff retained the capacity to work but would do best with minimal contact with the general public.

On June 7, 2010, Plaintiff was hospitalized for suicidal thoughts. Dr. Larry Lambertson, who had an established treatment relationship with Plaintiff, diagnosed her with bipolar disorder type 2, depressed, bulimia, and alcohol dependence. He wrote that "she probably at this point would warrant disability, so that she would have more ability to get out of the home environment, as well as continue getting appropriate care." AR 715. He evaluated Plaintiff's GAF as 35 on admission, 45-50 on discharge.

In October 2010, Dr. Vijoy Varma and nurse Karen Lothamer completed a Mental Residual Functional Capacity Questionnaire. They noted Plaintiff's diagnoses of bipolar II disorder, bulimia nervosa, alcohol dependence, and borderline personality disorder. The report indicated a current GAF of 51 and highest GAF over the past year of 45. The report indicated that Plaintiff was unable to meet competitive standards for a job because she had difficulty being around others, mood instability, and anxiety. The report stated that Plaintiff had difficulty processing details, was easily distracted, and would miss more than four days per month of work because of her impairments or treatment. The report indicated that Plaintiff was not a malingerer.

**STANDARD OF REVIEW**

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that, as a reviewing court, we may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595)); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

## DISABILITY STANDARD

To be eligible for disability benefits, a claimant must establish that she suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To be found disabled, the claimant's impairment must not only prevent him from doing his previous work, but considering his age, education, and work experience, it must also prevent him from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f).

5

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The steps are: (1) Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled, and the claim is denied; if no, the inquiry proceeds to step two; (2) Does the claimant have an impairment or combination of impairments that are severe? If not, the claimant is not disabled, and the claim is denied; if yes, the inquiry proceeds to step three; (3) Do(es) the impairment(s) meet or equal a listed impairment in the appendix to the regulations? If yes, the claimant is automatically considered disabled; if not, then the inquiry proceeds to step four; (4) Can the claimant do the claimant's past relevant work? If yes, the claimant is not disabled, and the claim is denied; if no, then the inquiry proceeds to step five; (5) Can the claimant perform other work given the claimant's RFC, age, education, and experience? If yes, then the claimant is not disabled, and the claim is denied; if no, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *see also Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

At steps four and five, the ALJ must consider an assessment of the claimant's RFC. The RFC "is an administrative assessment of what work-related activities an individual can perform despite [his] limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001) (citing SSR 96-8p, 1996 WL 374184 (Jul. 2, 1996); 20 C.F.R. § 404.1545(a)) (other citations omitted). The RFC should be based on evidence in the record. *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(3)). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski*, 245 F.3d at 886; *see also Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

ANALYSIS

Plaintiff argues that the ALJ's decision should be remanded because the ALJ improperly evaluated the evidence in the record.

A. **GAF Scores**

Plaintiff argues that the ALJ did not analyze Plaintiff's GAF scores, thereby failing to analyze evidence contrary to his conclusion. The Commissioner does not address the ALJ's omission.

The ALJ's RFC finding must be supported by substantial evidence. *Clifford*, 227 F.3d at 870. In arriving at an RFC, the ALJ "must consider all allegations of physical and mental limitations or restrictions and make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC." SSR 96-8p at *5. In addition, he "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe'" because they "may—when considered with limitations or restrictions due to other impairments—be critical to the outcome of a claim." *Id*. Although the ALJ need not discuss all the evidence, he must consider all the evidence that is relevant to making a determination of disability and give enough information to allow for meaningful review. *Clifford*, 227 F.3d at 870; *Young v. Barnhart*, 362 F.3d 995, 1002 (7th Cir. 2004); SSR 96-8p. Furthermore, an ALJ's "RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." SSR 96-8p at *7. "SSR 96-8p requires that medical source opinions must always be considered and addressed by the ALJ in the RFC assessment, and if it conflicts with the ALJ's conclusions then the ALJ must explain why it was not adopted." *Conrad v. Barnhart*, 434 F.3d 987, 991 (7th Cir. 2006).

Although a GAF score alone is not determinative of disability, s*ee Denton v. Astrue*, 596 F.3d

419, 425 (7th Cir. 2010), the ALJ did not even address Plaintiff's numerous GAF scores of less than 50, a score that indicates serious limitations. *See, e.g.*, *Punzio v. Astrue*, 630 F.3d 704, 711 (7th Cir. 2011) (recognizing that a GAF score of 60 was not inconsistent with an observation that the claimant's abilities to hold down an unskilled job would be "less than satisfactory"); *Campbell v. Astrue*, 627 F.3d 299, 306-07 (7th Cir. 2010) ("A GAF rating of 50 does not represent functioning within normal limits. Nor does it support a conclusion that [the plaintiff] was mentally capable of sustaining work."). The only GAF score even mentioned by the ALJ was a single score of 51 given by Dr. Varma as part of the Mental Residual Functional Capacity Questionnaire afforded little weight by the ALJ. The ALJ did not mention the numerous other GAF scores of less than 50, thereby erring by failing to address a significant line of evidence contrary to his conclusion. *See Campbell*, 627 F.3d at 306 ("A decision denying benefits need not discuss every piece of evidence, but if it lacks an adequate discussion of the issues, it will be remanded."); *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003) ("[T]he ALJ may not ignore an entire line of evidence that is contrary to the ruling.").

The ALJ's failure to address this entire line of evidence is particularly concerning since the ALJ concluded that there was little support in the record for the treating physicians' conclusions about Plaintiff's mental disorders. On remand, the ALJ is directed to thoroughly evaluate all of the evidence in the record, including lines of evidence that support Plaintiff's contention of disability, such as her GAF scores.

**B.      Weight to Doctors' Opinions**

Plaintiff argues that the ALJ erred in failing to consider the opinion of treating physician Dr. Larry Lambertson. Dr. Lambertson evaluated Plaintiff while she was hospitalized and participated

8

in her treatment team at Park Center, and, as part of his psychiatric evaluation on June 8, 2010, concluded, "I would think with the significance of her obesity, as well as the multiple different areas it has affected, that she probably at this point would warrant disability, so that she would have more ability to get out of the home environment, as well as continue getting appropriate care." AR 715. The Commissioner argues that Dr. Lambertson's opinion about Plaintiff's disability need not be given any weight because the determination of disability is a legal conclusion that is left to the Commissioner.

Although it is true that a medical source's opinion that a claimant is disabled does not mean that she is disabled within the meaning of the Social Security Act, 20 C.F.R. § 404.1527(e)(1), "[t]hat's not the same thing as saying that such a statement is improper and therefore to be ignored." *Bjornson v. Astrue*, 671 F. 3d 640, 647-48 (7th Cir. 2012). Rather, the ALJ must "evaluate all the evidence in the case record to determine the extent to which the opinion is supported by the record." SSR 96-5p, 1996 WL 374183, at *3, 5 (July 2, 1996); *see also Hamilton v. Colvin*, No. 12-3085, 2013 WL 1855725, at *6 (7th Cir. May 3, 2013) ("While the ALJ is right that the ultimate question of disability is reserved to the Commissioner, a treating physician's opinion that a claimant is disabled 'must not be disregarded.'") (quoting SSR 96-5p) (citing 20 C.F.R. § 416.927(e)(2); *Roddy*, 705 F.3d at 636)). The ALJ need not necessarily give controlling weight to Dr. Lambertson's opinion, but "he was required to provide a sound explanation for his decision to reject it." *Roddy*, 705 F.3d at 636-37 (explaining that ALJ must not ignore treating physician's opinion that plaintiff "could not handle a full-time job") (citing 20 C.F.R. § 404.1527(c)(2); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir.2011); *Campbell*, 627 F.3d at 306; *Ketelboeter v. Astrue*, 550 F.3d 620, 625 (7th Cir.2008); *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir.2007); *Skarbek v. Barnhart*, 390 F.3d 500,

503 (7th Cir. 2004)).

On remand, the ALJ is directed to thoroughly "evaluate all the evidence in the case record to determine the extent to which the [treating physician's] opinion is supported by the record," S.S.R. 96-5p, at *3. If the ALJ determines Dr. Lambertson's opinion is not entitled to controlling weight, he must give a sound explanation for his rejection. *Punzio*, 630 F.3d at 710.

## C. Weight to Questionnaire

Plaintiff also argues that the ALJ improperly evaluated the opinions of Dr. Vijoy Varma and Ms. Karen Lothamer as expressed in a Mental Residual Functional Capacity Questionnaire they completed. The Plaintiff takes issue which each of the four reasons given by the ALJ for discounting the questionnaire's conclusions: (1) the opinions were based on Plaintiff's reports, but Plaintiff was prone to exaggeration; (2) the opinions were only weakly supported by actual medical findings; (3) the conclusion that Plaintiff was not a malingerer was contradicted by inpatient treatment records; and (4) the opinions were inconsistent with Dr. Surakanti's report. The Commissioner argues that the ALJ articulated his reasoning for the limited weight given Dr. Varma's assessment.

In deciding how much weight to give a doctor's opinion, the factors an ALJ considers are: the length, nature, and extent of the physician's treatment relationship with the claimant; whether the physician's opinions were sufficiently supported; how consistent the opinion is with the record as a whole; whether the physician specializes in the medical conditions at issue; and other factors, such as the amount of understanding of the disability programs and their evidentiary requirements or the extent to which an acceptable medical source is familiar with other information in the claimant's case. 20 C.F.R. §§ 404.1527(c)(2)(i)-(ii), (c)(3)-(6); *see also Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008).

As the matter is being remanded for the reasons described above, on remand the ALJ is directed to thoroughly "evaluate all the evidence in the case record to determine the extent to which the opinion is supported by the record," S.S.R. 96-5p, at *3, paying close attention to the factors in 20 C.F.R. § 404.1527(c). If the ALJ again determines that Dr. Varma's opinion is not entitled to controlling weight, he must give a sound explanation for his rejection. *Punzio*, 630 F.3d at 710.

The Court particularly notes its concern with the ALJ's comments indicating that Plaintiff was malingering. There is no indication in the record that any medical professional concluded that Plaintiff was malingering. Malingering is one of the mental "conditions or problems that may be a focus of clinical attention" in the American Psychiatric Association's *Diagnostic and Statistical Manual of Mental Disorders, Text Revision* (4th ed. 2000) (DSM-IV). In this case, despite extensive treatment and indications that trained medical professionals considered whether Plaintiff may have been malingering, none of them concluded that Plaintiff met the listed features of malingering. The Court is concerned that the ALJ was impermissibly making his own independent medical findings despite repeated warnings by the Seventh Circuit that ALJs are not to "play doctor." *See Myles v. Astrue*, 582 F.3d 672, 677-78 (7th Cir. 2009); *Blakes v. Barnhart*, 331 F.3d 565, 570 (7th Cir. 2003); *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996). The ALJ is reminded of his responsibility to contact medical sources for clarification or to obtain the opinion of an additional examining expert. *See, e.g., O'Donnell v. Barnhart*, 318 F.3d 811, 818 (8th Cir. 2003) (questioning the ALJ's conclusion where "the doctors who examined and treated [the plaintiff] . . . did not indicate that she was magnifying her symptoms or malingering" and reminding him that "[i]f the ALJ doubted [the doctor]'s opinion [that the plaintiff was not malingering] or questioned its basis, he should have contacted the doctor for further information").

11

## CONCLUSION

Based on the foregoing, the Court hereby **GRANTS** the relief requested in Opening Brief of Plaintiff in Social Security Appeal Pursuant to L.R. 7.3 [DE 23] and **REMANDS** this matter for further proceedings consistent with this opinion.

SO ORDERED this 27th day of September, 2013.

s/ John E. Martin
MAGISTRATE JUDGE JOHN E. MARTIN
UNITED STATES DISTRICT COURT

cc: All counsel of record